Mr. Chief Justice Sharkey
delivered the opinion of the court.
The negroes sued for in this, action of trover by defendants in error, were the property.of Asa White, who died in Louisiana m 1828 or 1829, leaving his wife Cecilia surviving. He also left three children, the defendants in error, and one other who is since dead. The ownership of White and the heirship of defendants are fully established. At the death of their father they were small boys, six or eight years old. There is no proof that administration was ever taken out.
The plaintiff in error claims the negroes by purchase. The widow of White married Glasscock, from whom she separated and brought the negroes to Mississippi. Glasscock died in 1834, but his wife had a pretended marriage before his death, to wit, in 1832 or 1833, with one Winn. In November, 1833, Winn, jointly with Cecilia, conveyed the negroes to plaintiff for a valuable consideration, who has had them in possession and claimed them as his own ever since.
The defendants in error had previously instituted an action of replevin for the negroes, to which Johnson pleaded the statute of limitations of one year, to which infancy was. replied. To this replication Johnson demurred, and the demurrer was sustained, and the case thus disposed of. This former judgment *587 on demurrer was pleaded in bar in this action, to which plea a demurrer was sustained. On the trial the defendants in error succeeded, and Johnson brings up the case by writ of error.
Three grounds are relied on for reversing the judgment, to wit; 1st. That the demurrer to the plea of former recovery was improperly sustained; 2d. That the court erred in giving the instructions asked by the plaintiffs below, and in refusing those asked by the defendant; and 3d, The motion for a new trial w.as improperly overruled.
1. The effect of a former judgment as a bar to a second action was considered by this court in the case of Agnew v. McElroy, 10 S. & M. 552. The general rule that a judgment is conclusive between the same parties for the same cause of action, was held to be subject to certain exceptions. It is no bar to a second suit if the first action was incompetent-, or if the plaintiff mistook his character, or if the first judgment was given for faults m the declaration or pleadings. This case seems to fall within the exceptions; the judgment was given against the plaintiffs on a fault in pleading. The action of replevin may have been barred, but the action of trover was not. A judgment for the defendant on demurrer .to a declaration does not bar a new action, and it would seem that a demurrer to a replication should not. Nor is a judgment on any other pleading, which does not go to the foundation of the action, a bar to a subsequent suit. 3 Phillips, Ev. 835. The foundation of the action in this instance was the right of property; the matter adjudicated was as to a particular remedy. The merits were not involved, for although the remedy adopted might not have been the proper one, yet a different one would not have been subject to the same objection! The particular objection applied only to the action of replevin. If the merits of the second action were not decided in the first, it is no bar. Ib. 838. The merits, that is the right, were not adjudicated in the first suit. The demurrer to this plea was therefore properly sustained.
2. Did the court err in giving the instructions asked by the plaintiffs, or in refusing those asked by the defendant? The instructions given seem to be free from objection, except the *588 second, which is too restricted. It was calculated to lead the jury to believe that there was no, conversion, until demand and refusal. This subject is more directly presented by the first charge asked by defendant and refused. It is in substance this: If Johnson acquired the negroes by his purchase in 1833 from Winn and his pretended wife Cecilia, and has held and claimed them as his own ever since, or for three full years before the commencement of this suit, the law is for the defendant, though the plaintiffs, or either of them, were infants until within three years; and that these facts defeat, although demand was made within three years.
The defendant Johnson had pleaded the statute of limitations that the cause of action had not accrued within three years, to which plaintiffs replied generally that the cause of action had accrued within three years. The question is thus raised, When did the statute begin to run? In trover the cause of action accrues by the conversion. The doctrine,is very clearly laid down in the authorities. The finder of goods must convert them before he is liable, and demand will be evidence of conversion. But when goods are tortiously taken, the statute of limitations begins to run from the taking, for the tortious act is of itself a conversion. So an unlawful disposition of property rightfully in possession, is a conversion, and the statute begins to run from the time of such disposition. And it is immaterial whether the plaintiff knew of the conversion or not, if no fraud was practised to prevent his knowledge. Angell on Limitations, 327, 328; Read v. Markle, 3 Johns. Rep. 523.
Gréenleaf says,. “A conversion in the sense of the law of trover, consists either in the appropriation of the thing to the parties’ own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it in exclusion or defiance of the plaintiff’s right.” ... “If a bailee, in violation of orders, deliver goods to another, it is a conversion; and a wrongful sale of another’s goods is a conversion.” 2 Greenl. Ev. 530, 531.
The case of McCombie v. Davies, 6 East, 538, is very clear to the same effect, although it is sometimes cited to establish a different doctrine. Lord Ellenborough said, “ Certainly a man *589 is guilty of a conversion of my property by assignment of it to another who has no authority to receive it; for what is that but assisting that other in carrying his wrongful act into effect.” Lord Holt said, the very assuming to one’s self the property and right of disposing of another man’s goods, is a conversion. Baldwin v. Cole, 6 Mod. R. 212.
On these authorities, it is perfectly immaterial whether Winn and his pretended wife, Cecilia, had the rightful possession of the negroes or not. If they had a right to possession, the sale was illegal; the property belonged to White’s children, and the sale was a conversion. If, on the other hand, their possession was tortious, that of itself was a conversion. The dominion exercised by Johnson, his absolute claim of ownership, was a conversion. In any event, the conversion occurred in 1833, and from that time the statute of limitations began to run. There was no replication of infancy in this case, nor was that question raised, and of course it is left out of view. The charge asked should have been given, and for this error the judgment must be reversed, and the cause remanded. The other points need not be noticed. ■